IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 18-CR-267 |
| | : | The Hon. Amit P. Mehta |
| LONNELL TUCKER, | : | Sent. Date: May 31, 2019 |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The defendant, Lonnell Tucker, by and through his counsel, Brian K. McDaniel and The McDaniel Law Group, PLLC., respectfully represents that he has reviewed the Pre-sentence Report (PSR) and, in accordance with 18 U.S.C. § 3553(a) and the remedial scheme set forth in *United States v. Booker*, 125 S.Ct. 738(2005), and *United States v. Hughes*, 401 F.3d 540 (4th Cir. 2005), presents this Brief and Position of the Defendant with Respect to Sentencing Factors to aid the Court in determining an appropriate sentence.

Beginning on February 26, 2019 Mr. Tucker participated in a four week trial before this court along with his co-defendant, Messrs. Fields, Samuels, Wright and Hamilton. On March 21, 2019, the jury returned verdicts of guilty for defendants Fields, Samuels and Tucker, while acquitting Mr. Wright of all charges.[1] The jury found Mr. Tucker guilty of one count of Conspiracy to Distribute and Possess with the Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(i).

---

[1] As this court is aware, Mr. Lacey Hamilton resolved his matter by entering a plea of guilty during the trial proceedings and has since been sentenced by this court to a period of incarceration of 15 months; a fact relevant to the sentencing of Mr. Tucker and which will be discussed herein below.

The underlying conduct alleged that in June of 2017, Alcohol, Tobacco, Firearms and Explosives (ATF) began an investigation into drug trafficking from 2408 Martin Luther King, Jr. Ave., Southeast, Washington, DC. Law enforcement employed several investigatory techniques including but not limited to, surveillance, controlled purchases, residential search warrants, cell phones searches, arrests, jailhouse calls and cooperating witnesses. (PSI ¶20). The evidence of drug trafficking elicited during the trial was limited to the representations of the testifying cooperating witness, testimony of law enforcement regarding their surveillance of Mr. Tucker, GPS Monitoring and text messages from the phone of Mr. Tucker.

While the cooperating witness did testify that he witnessed Mr. Tucker "selling narcotics as if he had a license" to do so, this assertion was not supported by any of the objective evidence produced by the government at trial. Even if the court wished to credit the testimony of the case agents in this matter who testified about three occasions upon which Mr. Tucker was engaged in what they "believed" to be transactions, there is nothing on the record which corroborates the prolific exercise which was offered by the CW. No doubt the government will rely heavily upon the text messages recovered from Mr. Tucker's phone in which there is discussion about the acquisition of 50 shirts; of note is the fact that the government was able only to identify one such reference on the phone of Mr. Tucker and this entry was with someone not identified by law enforcement nor alleged to have been a member of the alleged conspiracy at bar. Indeed there was nothing uncovered by the government which supported the contention that Mr. Tucker was a large-scale distributor of narcotics. To the contrary, the record supports more reasonably a finding that Mr. Tucker is a low level street dealer who supports himself by the

distribution of retail amounts of narcotics which were secured from someone outside of the conspiracy alleged in the underlying indictment. The governments CW testified himself to having seen Mr. Tucker alight from the area which the witness described as the central location for the wholesale distribution of narcotics on "one" occasion and even then did not confirm that Mr. Tucker had received any narcotics from Mr. Fields. Neither did law enforcement execute any search warrant for any location associated with Mr. Tucker which revealed the possession of any large amounts of narcotics on the part of Mr. Tucker. These factors likely explain why the jury found Mr. Tucker guilty of participation in the conspiracy for a "detectable" amount of heroin alone and none of the other narcotics of which they were tasked to consider.

Counsel has reviewed the Governments Sentencing Memorandum submission. Counsel was shocked and amazed to see that the government was requesting a sentence of 234 months of incarceration for an individual who, by all accounts, including the evidence of the government at trial, was a street level distributor of narcotics who did not even have enough money to purchase his own vehicle. Not only was counsel shocked and amazed, admittedly counsel was troubled and disappointed that such a request would be made of the court, when the amount of time suggested is so obviously unjust and onerous. Counsel knows this to be true as the Government offered to agree to a sentencing guideline range of 15 to 21 months of incarceration for Mr. Tucker had he just agreed to waive his constitutional right to a jury trial, relieve the government of their obligation to prove his guilt and simply plead guilty. Now the government rises to say that they believe that a sentence eleven times that which was suggested by them before the trial is appropriate for Mr. Tucker, simply and for no other reason but that he decided

to exercise his **RIGHT** to go to trial. This is shocking and troubling as it is an obvious and blatant attempt to dissuade persons from exercising their right to jury trials in this jurisdiction. The message being if you plead guilty and waive your rights, this office will treat you fairly and decently, if you do not, we will attempt to give you as much time as possible. This message is intended to dissuade defendants from going to trial and to encourage defense counsel to persuade their clients to enter pleas of guilty instead of putting the government to it's constitutional burden. There is no other explanation for the government's willingness to resolve Mr. Tucker's case for a range of 15-21 months and to now be asking this court to sentence him to 234 months of incarceration, when the only thing which took place between these to advanced positions was Mr. Tucker's zealous efforts during his trial. (See Ex. 1). Just because the government *can* ask for this type of sentence does not mean that it *should*. The fact that it might be *regular* does not make it *right*.

      Mr. Tucker has evidenced his desire to turn his life around and to come into full compliance with the law during his extensive pretrial release, during which he was in full compliance. Now the Government asks this court to sentence him to 6 months short of 20 years in prison. As this court is aware, and thankfully for Mr. Tucker, the guideline range calculated by probation in connection with this matter is not mandatory. This court is bestowed with the authority to give Mr. Tucker a sentence which is fair, reasonable and if this court is so inclined, merciful.

      Mr. Tucker will now appear before the Court to be sentenced. Mr. Tucker does not dispute that he has been convicted of a crime which warrants some form of punishment. The central issue before the Court then is, what is the appropriate sentence

4

for the Defendant – what sentence would be "sufficient but not greater than necessary" to satisfy the purposes of federal sentencing in the circumstances of this case. See 18 U.S.C. § 3553(a). Mr. Tucker respectfully submits that a sentence of 48 months of imprisonment followed by a three-year period of supervised release would satisfy the §3553 criteria in this case. In support of this sentencing recommendation, Mr. Tucker asks this Court to consider the following: (1) While Mr. Tucker has significant contacts with the criminal justice system, his earliest convictions took place when he was little more than a juvenile; (2) as outlined in the presentence investigation report, he has suffered significant loss in the death of his father to murder in 1983. This coupled with his mothers crack addiction and the anti-social peer relationships which were developed during his formative years have contributed to some of his negative decision making; (3) Mr. Tucker has significant family responsibilities including the continued provision of financial and emotional support to his nine year old son and his 18 year old step son; and (4) the proposed sentence would give Mr. Tucker an opportunity to pay his debt to society while also giving him the opportunity to return to the community in a reasonable period of time.

I.    The Advisory Sentencing Range

The Presentence Investigation Report outlines the proposed guideline sentencing range at paragraph 140 of the report. USSG § 2D1.1 identifies the base offense level of 26 for convictions of Conspiracy to Distribute and Possess with Intent to Distribute a Mixture and Substance Containing a Detectable Amount of Heroin involving at least 400 grams, but less than 700 grams. Mr. Tucker advances that the determination of his responsibility for this amount of Heroin is arbitrary and not based upon any evidence

supporting the same at trial. That narcotics were found in and around the barbershop, when there was no evidence elicited that Mr. Tucker received any narcotics (let alone any particular amount) from anyone involved in this alleged conspiracy does not provide the requisite evidentiary support to hold Mr. Tucker responsible for this amount of narcotics. Indeed there is as much support for a finding that Mr. Tucker was responsible for 40grams but less than 60 grams, resulting in a base offense level of 18, as there is for the higher drug amount. As a result of the technical application of USSG §4B1.1, the Presentence report suggests that Mr. Tucker is a career offender as he has at least two prior convictions for a felony drug offense prior to his conviction in this matter. Our Circuit court of appeals has held that a sentencing court may invoke § 4A1.3 to depart downward from the career offender category if the court concludes that the category inaccurately reflects the defendant's actual criminal history. *United States v. Clark*, 8 F.3d 39 (D.C. Cir. 1993). As previously noted, the Government in the months prior to the trial of this matter, extended a plea offer to the Defendant attended by a proposed guideline range of 15-21 months of incarceration. This was done, at least at some level, having considered the criminal history of Mr. Tucker. Of the three convictions which are outlined in the Presentence Report, one occurred early in the previous decade and the other two decades ago. In 1996, when Mr. Tucker was only 19 years of age, he was convicted of Possession with the Intent to Distribute Cocaine. In 1999, when Mr. Tucker was 22, he was convicted in the Superior Court for the District of Columbia, again with Possession with the Intent to Distribute Cocaine. Counsel asks this court to consider the age of Mr. Tucker at the time of his earlier acts which resulted in convictions. Should the court agree that the defendant is a career offender the current guideline range to which

Mr. Tucker will be exposed is some 210 months to 240 months of incarceration. So, instead of the 48 months sentence requested by Mr. Tucker, he would be facing a range of 17 ½ to 20 years of imprisonment. Quite simply, even in the face of Mr. Tucker's earlier criminal contacts and convictions, the sentence of 48 months is consistent with the mandates of 18 U.S.C. § 3553(a) for a sentence which is "sufficient but not greater than necessary".

If the court is satisfied that Mr. Tucker is responsible for between 400 and 700 grams of Heroin, counsel requests that this court apply the offense level of 26 in that Mr. Tuckers' criminal history is overstated by virtue of the consideration of two, decades old convictions, which were incurred when Mr. Tucker was little more than a juvenile. Should the court not consider the earlier convictions, Mr. Tucker would have 2 criminal history points associated with his 2009 conviction for Distribution of CDS which he incurred when he was 32 yeas old. This would result in a criminal history category of II and a resulting guideline range of 70-87 months for base offense level 26 and 30-37 months should the court apply base offense level 18. This adjustment would reflect a more reasonable implication of Mr. Tucker's prior criminal history.

**II.      The Other § 3553 Factors**

In the post-Booker era, the sentencing court's duty is to consider all the factors identified in 18 U.S.C. §3553(a) and impose a sentence sufficient, but not greater than necessary" to comply with the four purposes of sentencing set forth in the statute. Those four purposes are the need for the sentence imposed to:  (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment: (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes of the

defendant; and (4) provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, §3553 requires the sentencing court to consider the following factors (in addition to the advisory Guidelines range and any pertinent policy statements issued by the Sentencing Commission) in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). 18 U.S.C. § 3553 (a)(1)-(7). For the reasons that follow, we submit that these purposes and factors support the Forty Eight month sentence that Mr. Tucker has proposed.

      A.    *The nature and Circumstances of Mr. Tucker's Offense*

Giving full honor and credit to the jury's verdict for the purpose of the sentencing hearing, the allegations asserted by the government in connection with this case are indeed troubling. However, a careful consideration of the evidenced provided by the government at trial reveals, at worst, that Mr. Tucker is a street level drug dealer who plies his trade with consistency, but in the absence of any violence or physical harm to anyone in the community. The sentence requested by the government is the type of sentence one might expect to be suggested should someone in Mr. Tucker's position, have sold some narcotics to someone who then overdosed on the narcotics. The government attaches to its memorandum, statistics regarding the rate of overdoses for individuals employing Heroin and specifically Fentanyl. Fortunately, there is no allegation here that any of the narcotics sold by Mr. Tucker included Fentanyl or that

8

anyone died as a result of the use of the product which he was selling. In the matter of *United States v. Antoine Henderson*, case No. 18-cr-189, the Honorable Judge Richard D. Bennett sentenced Mr. Henderson to a period of incarceration of 168 months (14 years) where Mr. Bennett entered a plea of guilty to Conspiracy to Possess With the Intent to Distribute and Distribution of Fentanyl and where Mr. Henderson acknowledged that the narcotics which he sold resulted in the overdose death of *two* individuals. The sentence requested here by the government is 5 ½ years longer than that received for a street level dealer with no deaths associated with his participation and where his greatest sin appears to be his having chosen to go to trial in this matter.

Mr. Tucker comes to this juncture in his life by virtue of his having made some unfortunate decisions out of a desire to improve his financial circumstance. He has certainly learned from his matriculation through this process and has demonstrated his desire to make more appropriate decisions going forward evidenced by his full compliance with his pretrial release conditions.

### B.   *The History and Characteristics of Mr. Tucker*

The history and characteristics of Mr. Tucker support the sentence that the defense implores this court to adopt. The court has had an opportunity to read the Presentence Investigation Report which outlines the difficult circumstances with which Mr. Tucker was confronted apparently from birth. A father who was involved with illegal activity and passed away when Mr. Tucker was a youth. A mother who was unable to properly supervise and advise a maturing child as a result of her own drug addiction. There is nothing about the early formative years of the defendant which suggests that he was shown any other way to support his self or even to live outside of the involvement

and influence of narcotics. Even with this, Mr. Tucker has apparently developed a strong work ethic which has manifested itself both in legal and illegal trade practices.

Mr. Tucker has significant familial responsibilities which result from the family unit which he has established with Ms. Carson. Counsel requests a sentence which would allow Mr. Tucker to pay his debt to society while also giving him an opportunity to return to the community in a reasonable period of time. These events also contributed to his use and abuse of marijuana and alcohol, which Mr. Tucker exhibited even up until the time of his arrest in this matter.

We respectfully submit that these considerations, and the entirety of Mr. Tucker's history and personal characteristics, weigh in favor of the Forty-Eight month sentence that has been proposed.

### C. *The Need to Provide Restitution to Any Victims*

Restitution does not appear to be a consideration in this matter.

### D. *The Purpose of Federal Sentencing*

As noted at the outset, Congress has identified four purposes of federal sentencing that must guide district courts in selecting a sentence within the statutory penalty range. The sentence must be "sufficient, but not greater than necessary" to serve those purposes. With these guideposts in mind, Mr. Tucker respectfully asks this Court to impose a sentence of 48 months of imprisonment, followed by a three-year period of supervised release.

The first purpose of federal sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." As discussed above, Mr. Tucker understands that he has been convicted of a serious felony

offense which resulted in real harm to the community. He is ashamed of his conduct. He respectfully submits that the sentence proposed by the defense provides "just punishment" for his offenses when the Court considers the additional sentencing elements available.

The second purpose of federal sentencing is "to afford adequate deterrence to criminal conduct." Forty-Eight months of incarceration will send a clear message of deterrence to anyone who might consider the commission of a similar crime. We respectfully submit that the proposed sentence is "sufficient but not greater than necessary" to serve the purpose of general deterrence. The court is well aware of the fact that Mr. Lacey Hamilton, ultimately decided to plead guilty during the trial of this matter and has subsequently been sentenced to 15 months of incarceration. Counsel suggests that Mr. Tucker's culpability is more in line with that for which Mr. Hamilton has been sentenced. The government points to Mr. Tucker's prior criminal conduct and the fashion in which he sold narcotics according to their Cooperating Witness. These are all facts and factors of which the government was aware when they were encouraging Mr. Tucker to accept the plea attended by the 15 to 21 month range. Their feigned outrage over Mr. Tucker's history would not have mattered to them at all, should he have just laid down and accepted their offer.

The third purpose of federal sentencing is " to protect the public from further crimes of the defendant." In light of the very real extended sentence that Mr. Tucker is facing, and the likelihood that any future conviction would result in decades of incarceration, he is as deterred from criminal activity as he could possibly be. His current

11

exposure has impressed upon him the very real need to remain in compliance with the law.

In conclusion, Mr. Tucker presents before the Court with deep remorse. He has made a serious mistake that will have permanent consequences for him. In imposing sentence, Mr. Tucker asks the Court to consider his difficult upbringing, his current familial responsibilities and the effort which he made to evidence for this court his desire and willingness to turn his life around through his full compliance with his pretrial release conditions. This court did not have to release Mr. Tucker prior to the trial, a fact that Mr. Tucker honored through the seriousness with which he took his obligations under his pretrial release. Mr. Tucker stands before the court now asking the court to believe that this was not an aberration, but a real commitment to a change in his life. Mr. Tucker asks this court to continue it's belief that Mr. Tucker is capable of doing better and continuing to be better. We respectfully submit that a sentence of Forty-Eight months is fully consistent with the Court's statutory mandate to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing.

Respectfully Submitted,

/s/Brian K. McDaniel_____
Brian K. McDaniel, Esq.
The McDaniel Law Group, PLLC
1920 L Street N.W.
Suite 303
Washington, D.C. 20036
Telephone (202) 331 – 0793

*Counsel for Lonnell Tucker*